

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| In re: FREDERICK W. THORNTON, III, | ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | WD77276 |
| LARRY DENNEY, Warden, | ) ) | **FILED:** March 17, 2015 |
| Respondent. | ) | |

**Original Proceeding on Petition for Writ of Habeas Corpus**

**Before Writ Division: Alok Ahuja, C.J., and Joseph M. Ellis and Thomas H. Newton, JJ.**

Frederick W. Thornton III pleaded guilty in October 2007 to driving while intoxicated (or "DWI"). The circuit court found Thornton to be a persistent offender because he had two prior convictions for driving while intoxicated. By finding that Thornton was a "persistent offender" with two prior DWI convictions, rather than a "prior offender" with one previous conviction, the circuit court enhanced Thornton's current offense from a Class A misdemeanor to a Class D felony. Thornton was given a sentence which exceeded the statutory punishment for a Class A misdemeanor. Thornton filed a petition for writ of habeas corpus, arguing that, as a result of the Missouri Supreme Court's decision in *Turner v. State*, 245 S.W.3d 826 (Mo. banc 2008), one of the convictions on which the circuit court relied to find him to be a persistent offender could not be used for enhancement purposes. We agree, and conclude that under *Turner*, Thornton could be classified only as a prior, rather than a persistent, offender. We accordingly grant Thornton's petition for writ of habeas corpus, vacate his 2007 conviction of a felony offense, and order that

the record of Thornton's 2007 conviction be amended to reflect a conviction of Class A misdemeanor driving while intoxicated.

## Factual Background

On October 2007, Thornton pleaded guilty in the Circuit Court of DeKalb County in Case No. 07K4-CR00429 to the charge of driving while intoxicated under § 577.010,[1] based on an incident which occurred on August 19, 2007. The State charged Thornton as a persistent offender, based on the fact that he had been convicted of driving while intoxicated on two prior occasions. Thornton's status as a persistent offender had the effect of enhancing the charge from a misdemeanor to a Class D felony. *See* § 577.023. The court sentenced Thornton to four years' imprisonment. Following Thornton's completion of an institutional treatment program, the court entered a 120-Day Order of Probation in February 2008, which suspended the execution of the balance of Thornton's sentence, and placed him on probation for five years.

On November 21, 2011, the court revoked Thornton's probation for the 2007 offense and executed his sentence, following his guilty plea to charges stemming from a January 28, 2011 accident in which another driver was killed. The court ordered that the sentences imposed in connection with the 2011 accident be served consecutively to Thornton's 2007 sentence.[2]

On January 14, 2013, Thornton petitioned the DeKalb County Circuit Court for habeas corpus relief with respect to his 2007 conviction, arguing that he did not qualify as a persistent offender under the Missouri Supreme Court's decision in *Turner*, because he had only one prior conviction that would qualify for enhancement. In response, the State argued that Thornton's

---

[1] Unless otherwise indicated, statutory citations refer to the 2000 edition of the Revised Statutes of Missouri, updated through the 2007 Cumulative Supplement.

[2] Thornton's motion for post-conviction relief in relation to the 2011 guilty plea was denied by the circuit court, and that ruling was affirmed by this Court. *Thornton v. State*, No. WD76734, 2014 WL 6781171 (Mo. App. W.D. Dec. 2, 2014), application for transfer filed Feb. 11, 2015, No. SC94786.

2

failure to file a timely post-conviction relief motion under Supreme Court Rule 24.035 barred him from seeking habeas relief. The circuit court denied Thornton's petition.

Thornton then filed a Petition for Writ of Habeas Corpus with this Court. We issued an order to show cause, and thereafter received briefing and heard oral argument.[3]

## Analysis

"'Habeas corpus is the last judicial inquiry into the validity of a criminal conviction and serves as "a bulwark against convictions that violate fundamental fairness."'" *State ex rel. Taylor v. Steele*, 341 S.W.3d 634, 639 (Mo. banc 2011) (quoting *Amrine v. Roper*, 102 S.W.3d 541, 545 (Mo. banc 2003) (in turn quoting *Engle v. Isaac*, 456 U.S. 107, 126 (1982))). In determining whether or not to grant habeas relief, we are "limited to determining the facial validity of confinement, which is based on the record of the proceeding that resulted in the confinement." *State ex rel. Zinna v. Steele*, 301 S.W.3d 510, 513 (Mo. banc 2010), quoting *State ex rel. Nixon v. Jaynes,* 63 S.W.3d 210, 214 (Mo. banc 2001).

In 2007, the circuit court found Thornton to be a persistent offender based, in part, on his guilty plea on August 22, 2000 to driving while intoxicated in the Cameron Municipal Division of the Circuit Court of Clinton County.[4] It is undisputed that Thornton received a suspended imposition of sentence (or "SIS") in the 2000 case.

On March 4, 2008, the Missouri Supreme Court decided *Turner v. State*, 245 S.W.3d 826 (Mo. banc 2008), which held that "the use of prior municipal offenses resulting in an SIS cannot be used to enhance punishment under section 577.023." *Id.* at 829.

---

[3]     The Court expresses its appreciation to attorney Sean D. O'Brien, who accepted this Court's appointment and represented Thornton on a *pro bono* basis.

[4]     This guilty plea was identified in the charging document as occurring on August 22, 200**2**. The parties do not dispute that the charging document was intended to refer to Thornton's August 2000 guilty plea.

The State does not dispute that, if *Turner* is applicable to Thornton's 2007 conviction, there was no basis to find Thornton to be a persistent offender, and he should not have been convicted of a Class D felony. The State argues, however, that Thornton is not entitled to habeas corpus relief for two reasons: *first*, because he should have raised the *Turner* issue in a motion for post-conviction relief under Supreme Court Rule 24.035, which was required to be filed no later than May 2008; and *second*, because *Turner* should not be applied "retroactively" to Thornton's 2007 conviction, which is now final. We reject both of the State's arguments.

**I.**

Thornton could have raised his current claim in a motion for post-conviction relief under Rule 24.035. *Turner* was decided before the time for Thornton to file a post-conviction relief motion expired, and he therefore could have relied on that decision in a timely Rule 24.035 motion. We must first decide whether Thornton may raise his claim in this habeas corpus proceeding, despite his failure to raise it earlier in a timely-filed post-conviction relief motion.

Normally, a petitioner's failure to raise a claim in a direct appeal or in a post-conviction relief motion bars the petitioner from subsequently raising the claim in a petition for writ of habeas corpus. *State ex rel. Zinna v. Steele*, 301 S.W.3d 510, 516 (Mo. banc 2010).

> A defendant who fails to raise a challenge to his conviction on direct appeal or in a timely post-conviction proceeding is said to have procedurally defaulted on those claims. Procedurally defaulted claims cannot be raised in a petition for writ of habeas corpus unless: (1) the claim relates to a jurisdictional issue; or (2) the petitioner establishes a showing by the preponderance of the evidence of actual innocence, that would meet the manifest injustice standard for habeas relief under Missouri law, (a "gateway of innocence claim"); or (3) the petitioner establishes cause for failing to raise the claim in a timely manner and prejudice from the constitutional error asserted, (a "gateway cause and prejudice claim").

*Ferguson v. Dormire,* 413 S.W.3d 40, 52-53 (Mo. App. W.D. 2013) (citations and internal quotation marks omitted).

4

"Cases in which a person received a sentence greater than that permitted by law traditionally have been analyzed under the ['jurisdictional defect'] exception[ ]." *Zinna*, 310 S.W.3d at 517. Following the decision in *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249 (Mo. banc 2009), it is a misnomer to describe such unauthorized sentences as involving a "jurisdictional defect." *Zinna*, 310 S.W.3d at 517. *Zinna* emphasized, however, that "[w]hatever label is applied, . . . it is settled that the imposition of a sentence beyond that permitted by the applicable statute or rule may be raised by way of a writ of habeas corpus." *Id*.; *see also State ex rel. Koster v. Jackson*, 301 S.W.3d 586, 590 (Mo. App. W.D. 2010) ("Even if a habeas petitioner has failed to timely raise a claim in a Rule 24.035 motion, it is settled that the imposition of a sentence beyond that permitted by the applicable statute or rule may be raised by way of a writ of habeas corpus."; citing *Zinna* and *Merriweather v. Grandison,* 904 S.W.2d 485, 486 (Mo. App. W.D. 1995)).

We recently suggested that, because the unauthorized sentences subject to review in habeas corpus proceedings do not implicate the subject-matter jurisdiction of the sentencing court, such unauthorized sentences are more properly referred to as "sentencing defects," rather than "jurisdictional defects." *Branch v. Cassady*, No.WD77788, 2015 WL 160718, at *2 n.2 (Mo. App. W.D. Jan. 13, 2015). We use that terminology here.

In *State ex rel. Koster v. Jackson* we held that the exact same claim raised by Thornton in this case – that he did not qualify as a "persistent offender" in light of *Turner* – was a "sentencing defect" claim which could properly be raised in a habeas corpus proceeding, despite the petitioner's failure to raise the claim in a motion for post-conviction relief:

> In this case, Mitchell [(the habeas petitioner)] was sentenced as a persistent offender, supported, in part, by a guilty plea to a municipal charge of driving while intoxicated for which Mitchell received a suspended imposition of sentence. Following the interpretation of Section 577.023 provided in *Turner*,

5

which held that a prior municipal offense resulting in a suspended imposition of sentence could not be used to enhance punishment, the State failed to demonstrate Mitchell was a persistent offender. Thus, the sentencing court exceeded its authority in sentencing Mitchell to five years of imprisonment as a persistent offender because the factual predicate necessary to place Mitchell in this enhanced statutory range of punishment was lacking.

*Jackson*, 301 S.W.3d at 590.

The State argues that *Jackson* is distinguishable, because *Turner* was decided after the time had expired for the habeas petitioner in *Jackson* to file a motion for post-conviction relief. Thus, the petitioner in *Jackson* could not have raised the *Turner* issue in a timely post-conviction relief motion. In this case, by contrast, Thornton had approximately two months following the decision in *Turner* within which to file a timely post-conviction relief motion raising the *Turner* issue.

The State's attempt to distinguish *Jackson* is unpersuasive. Under *Zinna*, a habeas corpus petitioner is entitled to raise a sentencing defect in a habeas corpus proceeding despite the fact that the petitioner could have raised the issue in a post-conviction relief motion; a petitioner raising a sentencing defect need not show that he had "cause" for failing to raise the issue at an earlier time. Indeed, in *Zinna*, the petitioner plainly could have raised his habeas claim in a timely direct appeal or post-conviction relief motion. The petitioner in *Zinna* argued that his sentence was unauthorized because the court's written judgment, which stated that his sentences would run consecutively, was inconsistent with the oral pronouncement of his sentences, which would be interpreted to impose concurrent sentences by virtue of Supreme Court Rule 29.09. The petitioner's argument in *Zinna* was based on Rule 29.09 (which has been in existence without amendment *since 1980*), and on caselaw which predated his conviction. In *Zinna*, therefore, the sentencing argument was available to the petitioner at a time when he could have appealed from the trial court's written judgment, or filed a timely post-conviction relief motion.

6

Yet the Supreme Court held that the claim could properly be raised in a habeas proceeding. Therefore, whether or not Thornton had the ability to raise the *Turner* issue in a timely post-conviction relief motion is irrelevant. *Jackson*'s holding that a claim like Thornton's involves a "sentencing defect" excuses Thornton's failure to raise the claim earlier.

The State also argues that Thornton is precluded from seeking habeas review under the Missouri Supreme Court's decision in *State ex rel. Simmons v. White*, 866 S.W.2d 443 (Mo. banc 1993). In *Simmons*, the petitioner sought to challenge a similar persistent offender finding, based on *State v. Stewart,* 832 S.W.2d 911 (Mo. banc 1992), which clarified the number of prior convictions necessary to establish "persistent offender" status. In *Simmons*, the petitioner initially pled guilty and admitted his status as a "persistent offender" under a charging document which alleged an insufficient number of prior convictions in light of the *Stewart* decision. *Simmons*, 866 S.W.2d at 444. (*Stewart* was decided ten days prior to Simmons' initial plea. *Id.*) The State later realized that the initial charging document was insufficient to establish "persistent offender" status under *Stewart*, and attempted to amend the charging document to allege additional prior convictions. *Id.* The sentencing court set aside the previous conviction and sentencing, and Simmons pleaded guilty to the amended charges, and received the same sentence as before. *Id.* at at 444-45.

Simmons later petitioned for habeas relief, alleging that his second guilty plea was invalid, and that the factual basis underlying his initial guilty plea failed to sufficiently establish "persistent offender" status under *Stewart*. 866 S.W.2d at 446. The Missouri Supreme Court determined that Simmons' second plea and sentencing were void. It held, however, that Simmons was not entitled to challenge his first conviction and sentence in a habeas corpus proceeding. The Court held that "[h]abeas corpus may be used to challenge a final judgment

7

after an individual's failure to pursue appellate and post-conviction remedies *only* to raise jurisdictional issues or in circumstances so rare and exceptional that a manifest injustice results."

*Id.* The Court held that Simmons had failed to satisfy this standard.

> We are convinced that petitioner's procedural defaults stemmed not from unawareness, but from a calculated, strategic decision to forego both appeal and post-conviction motions in the hope of receiving probation within 120 days. . . . [¶] . . . By deliberately bypassing appellate and post-conviction remedies in an attempt to gain a more favorable consideration of his request for probation, Simmons waived his rights to those remedies.

*Id.* at 446, 447.

*Simmons* does not control this case. First, to the extent *Simmons* suggests that proof of an insufficient number of prior convictions to support enhanced sentencing is not a "sentencing defect" reviewable in a habeas corpus proceeding, the decision has been superseded by *Zinna*. *Zinna* holds that "the imposition of a sentence beyond that permitted by the applicable statute or rule may be raised by way of a writ of habeas corpus." *Zinna*, 310 S.W.3d at 517. As we recognized in *Jackson*, in *Zinna* the trial court had the *statutory authority* to impose consecutive sentencing on the petitioner, but the trial court did so in a procedurally improper way – by referencing consecutive sentencing only in its written judgment, but not in its earlier oral pronouncement of sentence. *Jackson*, 301 S.W.3d at 590 n.5; *see also Taylor*, 341 S.W.3d at 639, and *State v. Whitfield*, 107 S.W.3d 253, 269 n.19 (Mo. banc 2003) (both cases holding that a defendant presented a "sentencing defect" claim reviewable in a habeas proceeding, where the defendant claimed that it was unconstitutional for a judge, rather than a jury, to decide whether statutory factors justified imposition of the death penalty). *Jackson* followed *Zinna* and held that the very same sentencing error alleged by Thornton in this case constitutes a "sentencing defect" subject to correction in a habeas corpus proceeding. To the extent *Simmons* applied a narrower

8

understanding of the types of "sentencing defects" subject to review in a habeas corpus proceeding, it no longer accurately states the law.

More importantly, *Simmons'* refusal to allow the petitioner to pursue a habeas remedy was based on the fact that the petitioner in that case chose to plead guilty a second time, after the *Stewart* issue had become apparent. According to the Court, the petitioner's actions reflected "a calculated, strategic decision to forego both appeal and post-conviction motions," a "deliberate[] bypassing" of appellate and post-conviction remedies. *Simmons,* 866 S.W.2d at 447.[5] There is no evidence of such a "calculated, strategic decision," or "deliberate bypass," by Thornton in this case.

## II.

Having established that this Court has the authority to hear Thornton's claim in this habeas corpus proceeding, we now turn to the State's alternative argument: that *Turner* should not be applied "retroactively" to Thornton's case.

Thornton is not seeking the "retroactive" application of *Turner*. Instead, Thornton's argument is that under § 577.023 (as interpreted in *Turner*), the State failed to prove the requisite number of prior convictions necessary to support a finding that Thornton was a "persistent offender." Section 577.023 was in effect at the time of Thornton's guilty plea – it is not being applied retroactively. Moreover, the Missouri Supreme Court has held that "[i]n *Turner*, this

---

[5] *Simmons'* reference to the petitioner's "deliberate bypass" of post-conviction remedies harkens back to the standard applied to procedural defaults in federal habeas proceedings by *Fay v. Noia*, 372 U.S. 391, 439 (1963) (overruled by *Coleman v. Thompson*, 501 U.S. 722 (1991)). This "deliberate bypass" standard required the petitioner to engage in "an intentional relinquishment or abandonment of a known right or privilege," reflecting "the considered choice of the petitioner." *Fay*, 372 U.S. at 439; *see also*, *e.g. Humphrey v. Cady*, 405 U.S. 504, 517 (1972) (stating that "deliberate bypass" standard requires "an understanding and knowing decision [to forego review] by the petitioner himself"; the petitioner must make "a deliberate strategic waiver of his claim").

Court made no new law; it merely clarified the language of an existing statute." *State v. Severe*, 307 S.W.3d 640, 642-43 (Mo. banc 2010). The Court held that – even before the *Turner* decision – "[t]he state was on notice by the plain language of section 577.023.16 that a guilty plea followed by a suspended imposition of sentence in 'municipal court' was not to be treated as a prior conviction." *Id.* at 644. The State itself argues in its Brief that "*Severe* makes plain that the *Turner* decision was based on statutory construction and not a new rule of law." State Br. at 19.

In these circumstances, where Thornton's petition relies on a judicial opinion interpreting a statute which was in effect at the time of his conviction, and that judicial opinion "created no new law," no retroactivity issue arises. Indeed, if the State were correct that *Turner*'s construction of § 577.023 cannot be applied "retroactively" to convictions which were final at the time *Turner* was decided, that would have prevented relief in *Turner* itself, since *Turner* was decided on a motion for *post-conviction* relief.

The Supreme Court of the United States has addressed a virtually identical issue, and held that no issue of "retroactivity" is presented where a later judicial decision interprets the meaning of a pre-existing statute. In *Fiore v. White*, 531 U.S. 225 (2001), the defendant Fiore was convicted of violating a Pennsylvania criminal statute. Although Fiore argued that the statute should not be interpreted to apply to his conduct, this argument was rejected by the intermediate Pennsylvania appellate courts, and the Pennsylvania Supreme Court refused to review his case. *Id.* at 227. After Fiore's conviction became final, the Pennsylvania Supreme Court determined – in a case involving Fiore's co-defendant Scarpone – that the criminal statute at issue could not be interpreted to apply to conduct like Fiore's. *Id.*

10

Fiore filed a petition for a writ of habeas corpus in the federal courts. In response to a certified question from the Supreme Court of the United States, the Pennsylvania Supreme Court explained that its decision in *Scarpone* "did not announce a new rule of law," but "merely clarified the plain language of the statute." *Id.* at 228. Given that the Pennsylvania Supreme Court's decision in *Scarpone* was merely intended to clarify the meaning of a pre-existing statute, the United States Supreme Court held that no retroactivity issue was presented by Fiore's request that *Scarpone*'s interpretation of the relevant statute be applied to his conviction:

> The Pennsylvania Supreme Court's reply [to the certified question] specifies that the interpretation of § 6018.401(a) set out in *Scarpone* "merely clarified" the statute and was the law of Pennsylvania – as properly interpreted – at the time of Fiore's conviction. Because *Scarpone* was not new law, this case presents no issue of retroactivity. Rather, the question is simply whether Pennsylvania can, consistently with the Federal Due Process Clause, convict Fiore for conduct that its criminal statute, as properly interpreted, does not prohibit.

*Id.* at 228. The Court held that Pennsylvania could not constitutionally punish Fiore for conduct which did not violate the relevant statute. *Id.* at 228-29. The Court applied the same analysis to a later judicial interpretation of a pre-existing statute in *Bunkley v. Florida*, 538 U.S. 835, 839-41 (2003).

In *Severe*, the Missouri Supreme Court characterized the decision in *Turner* in precisely the same way that the Pennsylvania Supreme Court characterized its decision in *Scarpone*: *Severe* holds that *Turner* "made no new law; it merely clarified the language of an existing statute." 307 S.W.3d at 642-43. Under *Fiore* and *Bunkley*, this case presents no "retroactivity" issue which can prevent the application of *Turner*'s interpretation of § 577.023 to Thornton's 2007 conviction.

### III.

As noted at the outset of our analysis, the State has conceded that, if Thornton is entitled to raise his *Turner* claim in this habeas proceeding, and if we conclude that *Turner* applies to

11

Thornton's 2007 conviction, then that conviction violates *Turner*, because the State failed to prove that Thornton had two prior DWI convictions under § 577.023 as it existed at the time.

Thornton concedes that the State proved that he had *one* previous DWI conviction, and therefore that he qualified as a "prior offender" under § 577.023.1(6). Because Thornton was a "prior offender," under § 577.023.2 his violation of § 577.010 constituted a Class A misdemeanor (rather than a Class D felony). Because he could only properly be found guilty of a Class A misdemeanor, Thornton could be placed on probation for no more than two years. § 559.016.1(2).

The circuit court revoked Thornton's probation associated with the 2007 conviction in November 2011, almost four years after Thornton was placed on probation. This was well beyond the two-year maximum probationary period to which Thornton was subject on conviction of a Class A misdemeanor. Once the probationary period has expired, a court does "not have jurisdiction over [a probationer] 'for any purpose, whether to cite him for probation violations, revoke probation, or order execution of the sentence previously imposed.'" *State ex rel. Limback v. Gum*, 895 S.W.2d 663, 664 (Mo. App. W.D. 1995) (quoting *State ex rel. Musick v. Dickerson*, 813 S.W.2d 75, 77 (Mo. App. W.D. 1991)); *see also Roach v. State*, 64 S.W.3d 884, 887 (Mo. App. S.D. 2002). Therefore, the circuit court was without jurisdiction to revoke Thornton's probation with respect to his 2007 conviction in November 2011, or execute any sentence previously imposed upon him.

### Conclusion

The circuit court lacked the authority to sentence Thornton for Class D felony driving while intoxicated in connection with his 2007 conviction, or to order the revocation of his probation and the execution of his sentence for the 2007 conviction in November 2011. We accordingly order that Thornton be discharged and relieved from his 2007 conviction of a Class

12

D felony, and from the execution of any sentence associated with that conviction. With respect to his 2007 DWI conviction, Thornton constituted a prior offender, not a persistent offender, and could be convicted only of a Class A misdemeanor, not a Class D felony. We order that the record of Thornton's conviction in Case No. 07K4-CR00429 in the Circuit Court of DeKalb County be amended to reflect Thornton's conviction of driving while intoxicated as a prior offender, a Class A misdemeanor.

Thornton's sentences for his separate 2011 convictions were ordered to run consecutively to the sentence on his 2007 conviction. At the time of his 2011 sentencing, however, there was no sentence associated with his 2007 conviction which could lawfully be executed. Therefore, no sentence associated with his 2007 conviction could delay the running of the sentences associated with Thornton's 2011 convictions.

_____
Alok Ahuja, Chief Judge

All concur.

13